for today, Silberman v. Miami-Dade Transit. Mr. Silberman. Good morning, Your Honors. Good morning. May it please the Court, my name is Charles Silberman. I'm a pro se litigant and I'm the appellant in this case. I did receive a letter to address a case called Glickstein v. Sunbank, and the letter asked me to address why the Court should hear this matter. I guess there's a concern about jurisdiction. Well, in looking at Glickstein, there's quite a few differences. First of all, in this case, the county and the district court approved the complaint that's on appeal to be considered as the county was the defendant of record, as the proper defendant. And also, the same holds true for the motion to dismiss. The court construed the motion to dismiss as being filed by the county. I guess, are we in a posture where both the plaintiff and the defendant are in agreement that the Miami-Dade Transit Agency is not a separate legal entity, but is some kind of arm of the county itself, and that the parties are treating the suit against Miami-Dade Transit as a suit against the county? Not so, because Miami-Dade County Codes says that any kind of damages that are sought against the operations of transit are to be settled by the county. So it's really directed by Miami-Dade County Codes. The reason that I listed the transit is because under the Rehabilitation Act, you have to say that the transit received federal funding. So I put them down as the defendant, it was just my error, but it wasn't, it was just a mistake. And actually, this complaint before you today is a refiled case of a complaint that I filed initially with Miami-Dade County as the party. So that's why the court and the county, we all agreed to treat it as if the county was a proper defendant in this case. And if there's no more questions about that, I'll talk about the issues. Are we okay with that? All right. I think very simply, the matter of sovereign immunity is . . . And Mr. Subramanian, you argue what you want, and if we have questions about something else, we'll ask you. Thank you, Your Honor. I think the matter of Eleventh Amendment immunity for a county in federal court has been well documented at the Supreme Court precedent. That goes back 130 years, undisturbed, in a case called Lincoln County v. Lunig. And case law is filled with cases where the county does not enjoy Eleventh Amendment immunity in federal court. So I'm not going to . . . And the Department of Justice, as I'm sure you know, filed the brief. Right. So let's go to the claim for compensatory damages under Title II and under Section 504. Thank you. And I think that's really the more interesting issue to talk about. The first thing that needs to be talked about is the fact that the county is a Title II public entity. And the standard of liability when it comes to an ADA violation or an RA violation for Title II public entity is vicarious liability. And the court below applied the standard for when a Title III private entity, in particular the Lee C.V. Indian River Hospital case, just right away, the fact that they cited that case, they went astray from applying the correct standard of liability. And so the precedent is definitely on my side. And, for instance, there's three cases, I believe they're all published cases as well. In T.W. X.R.L. Wilson v. School Board of Seminole County, Florida, in Mason v. Stallings, and in Ellis v. England, this court ruled under the ADA, simply put, public entities are vicariously liable for the discriminatory acts by any of its employees. And that makes it different than a Title III standard of liability. Moreover, pursuant to Ellis, binding precedent obligates this court to find the standard for determining liability under the RA is the same as under the ADA and vice versa. So we already have precedent that ADA claims are handled vicarious under the standard of vicarious liability. And if their claims are handled the same as under the ADA and the RA for a Title II entity, then therefore, the standard for determining liability would be the same, and that would be vicarious liability under the RA claim. So can I ask you a quick question? I've got it in my notes. I don't recall specifically, but that, and I recognize, of course, that we hold pro se litigants to a lesser standard of pleading and practice. But did you raise this leasee Title II, Title III argument in your blue brief or only in the gray brief? I've been arguing this case as soon as the report and recommendation came out that leasee was the wrong liability standard. So as to vicarious liability, you've been singing the same song from the very beginning, including in your blue brief, to this court? Yes, Your Honor. Okay. I'll just check that. Yes. For sure. There's no question about that. And then- I didn't see it in the blue brief. The vicarious liability? I did spend a whole lot of time on the sovereign immunity issue on my brief, and more than I really needed to, and I understand that. But it was raised below. Well, you recognize the unfairness, though, is that even as a pro se litigant, the other side doesn't have an opportunity to respond to a vicarious liability in this court that isn't raised in the blue brief. And then if you come in on page one of your gray brief and say, oh, in fact, leasee is the wrong case and vicarious liability is the regime, and they're sort of like, oh, shoot. We didn't get to respond to that. Okay. I do believe that in some of the filings by the county, they do address the standard of vicarious liability. And when I have some time, I'll see if I can locate that. But I'm quite sure that that was addressed by the county. So obviously, they had time to respond about it. They were aware that a standard of liability was at issue. So I did want to say, though, persuasive precedent exists, in particular, that Title II public bus entities are vicariously liable for the discriminatory acts by its bus operators under both the ADA and the RA. The Fifth Circuit in Casas V, City of El Paso, the Ninth Circuit in Midget V, Tri-County Metropolitan Transportation District, and the District of Columbia Circuit Court in Burkhardt v. Washington Metropolitan Area Transit Authority all concluded a public bus entity is vicariously liable for the discriminatory acts by its bus operators. And also, the court in Lee C took judicial notice of the fact the Second Circuit in Patton v. Dumpston, the Fourth Circuit in Rosen v. Montgomery County, Maryland, the Fifth Circuit in Delano Pyle v. Victoria County, and the Ninth Circuit in Duval v. County of Kitsap all found under either the RA or the ADA, vicarious liability applies to suits brought against Title II entities. And I do want to emphasize, because I'm sure the county will do what they've been doing all along, which is conflating Title II liability standard with Title III liability standard. So a lot then rides on the waiver issue that we've been discussing, whether or not this Lee C slash Title III argument was raised in the blue brief, because it sounds like if it's fairly before us, then you've got a leg to stand on, that vicarious liability is good and bus drivers are fine. But if instead, if the Lee C standard controls, then they've got to be officials, and now we're into some deeper water about whether bus drivers would be officials under that standard. Okay. Hard for me to see how bus drivers are officials. Are? Yeah. I don't think they need to be. But let's assume that the vicarious liability issue's not before us. Okay. So let's go to the sovereign immunity. Let's first talk about whether bus drivers can be officials. Oh, okay. I mean, they're the gatekeepers. I go try to get on a bus, they see me with my service animal, they continue driving by. Right, and you complain about it, and remediation is taken against them because they're not following what the agency policies are, which shows to me that they're not officials. The bus operators. Yeah, you've got to go up the chain to the real official. Okay. And the officials who establish what the policy is, oh, you're right, Mr. Silberman. They're not doing what they're supposed to do. We're going to fix that problem. And they do something about it, as you've conceded, right? Correct. Correct. Doesn't that, doesn't that on its face show that they're not officials of the agency, the bus drivers? I think they're the gatekeepers. But isn't, I mean, the difficulty is that that proves too much, right? Because every violator, every alleged violator of the ADA or the RA is a gatekeeper with respect to the offense, right? So if every gatekeeper is also an official, then now whether we're in Title II or Title III, we're in vicarious liability land. And Lisi has said as to Title II, no. Okay. So you do have the persuasive precedent from the cases I mentioned that Title II bus operators make the transit authority liable. So there are those published, several circuit court cases that say that. The other thing is, the law is, and this was established in LSV England, that should transit, and I was speaking to somebody, let's say paratransit is a private entity and they're in a contract with Miami-Dade Transit to provide transportation for those who are not mobile. If a paratransit driver discriminates, this is a third private party entity, Miami-Dade Transit is vicariously liable under that situation. So to say that they wouldn't be vicariously liable for their own employees is a bizarre, bizarre result. And that's the LSV England case. So, and the county is going to speak a lot about the estate of, sorry, of the Miami-Dade County. That is their only case involving a Title II entity. And that's the only case I believe that really warrants any kind of attention. And in that case, it's an unpublished case, and it's directly in conflict with the published cases coming out of this circuit. So I don't really think it carries much weight. And the principal reason that it arrived at its decision was because it relied on leasing a Title III entity. It needs to be a Title II. And I appreciate, you know, your concern about it not being raised, and I believe it has been. I really do. Mr. Silberman, you've got three minutes for rebuttal. Yes. We're going to hear from the county. Thank you, Your Honors. Thank you. Ms. Vecchione. Good morning, Your Honors. May it please the Court. Anita Vecchione on behalf of the APELI, which is Miami-Dade Transit Agency for purposes of this appeal. Okay, well. Let's start there. Let's start there. Exactly. Well, so as Mr. I mean, I'm confused. What's our situation here? So as Mr. Silberman summarized, we did not oppose the substitution. At the district court level, the amendment of the pleading to properly name Miami-Dade County and not a department of the county, Miami-Dade Transit. Okay. So for purposes of this suit, should we treat this as an action against the county? So we did not oppose. But you don't object to that. You didn't object to it in your red brief, right? Oh, so we didn't even brief it because I didn't oppose his motion to substitute in the appeal. Right. Having read Glickstein, in light of Glickstein, I'm not sure that a Federal Rule of Appellate Procedure 43 allows the substitution. Right. Given Glickstein's recognition that it's based on the law. I just, the thing that's super frustrating about this is that, you know, it just seems would be a complete waste of time to vacate and remand so that then the substitution could be granted and then it could come back again and we could decide the issues that are all before us now. I agree with that, Your Honor. I'm obviously reluctant to say that the parties can rewrite a rule of procedure by agreement. I think that Glickstein does control, but I would like to touch on the merits very briefly since we're here. And that's really, this is a case where the narrowness of plaintiff's sought relief is dispositive. He has made abundantly clear in his pleading and his filings at the district court level and in his briefing here that he's really only seeking liability and damages. He's seeking compensatory damages. And the argument, the thrust of the argument is that under the Rehabilitation Act, bus drivers should be considered officials for liability in damages. So what about his, help me with my confusion about whether the vicarious liability argument has been raised or not. Because it seems like, wow, I mean a lot hinges on that. Because your official line argument sort of sounds like applies if we're not in pure vicarious liability land. It may not apply if we're in vicarious liability land. So, Your Honor, I think the vicarious liability applies for injunctive relief, for liability full stop. I think that the precedent of this court and by analogy of the Supreme Court made clear that liability in damages is where it's circumscribed. That's where you have, that's where the official requirement where deliberate indifference really come into play. I see. So it's not a Title II, Title III cleavage, it's a damages injunction cleavage. That's what I would, that's what I would posit. That it's liability versus liability in damages. You can have vicarious liability for injunctive relief, but Mr. Silverman isn't seeking that and has expressly disavowed as much. Can we talk about vicarious liability for an injunction? That just sounds odd to me. Maybe it's because I come from commercial litigation background, but that just seems odd to me. I mean, I think that we could foresee a world where you have employees, rank and file employees, perhaps discriminating and. But the question is whether there's a violation. Vicarious liability is a theory about whether there has been a wrong, right? I mean, to me the damages versus injunctive relief distinction is who's a proper defendant for affording you the relief once a violation has been established. You want to make sure that it's a redressable matter, that, you know, you're going to enjoin someone who can actually redress the violation. But vicarious liability to me goes to whether there has been a violation. I hear that. The concern really is, I think that this is actually a question of whether the pleading has stated a claim for relief, plausibly. And when the relief sought is so narrow, when the pleading on its face forecloses the only relief sought, then we do have the question of the violation, but it's inextricably tied to the relief being sought. And that relief is liability in damages, is monetary relief. And an organization's liability in damages is really comes from the actions of someone who can be said to speak for the organization. This is sort of like Monell municipal liability in 1983 where it's like not pure vicarious liability. You've got to show customer policy and to do that you've got to show sort of that it's sort of analogous. It's a policymaker. It's an official. Whatever you call it. It's kind of like Ellerth and Farragher in Title VII. You've got to show that they're a supervisor. Somehow you're saying you've got to kind of work your way up the org chart far enough to say that this is fairly attributable to the organization. There's some analogy there. I do think, just because I'm somewhat familiar with Monell claims as well, that the policymaker requirement in Monell is a little higher. I think that the official requirement for liability in damages is a little lower. But the Gebster case kind of has a really pithy line about it. It's the Supreme Court and it's quoting a different case saying, you know, when it accepted federal funds, the organization agreed not to discriminate. It didn't agree to suffer liability whenever one of its employees discriminates. And that's really what we're talking about is moving the needle whether a bus driver can be an official for purposes of liability in damages. And you say no? I say no. Why? Because I think it's clear that bus drivers are really rank and file employees. They have absolutely no supervisory authority. And I think that reading it any other way would render the official requirement meaningless, which is something that the 11th Circuit's opinion, Lisi, I'm sorry, I'm not really sure how to pronounce that, recognized is that interpretation renders it meaningless. And because we can't have that, I would posit that even at the pleading stage, bus drivers cannot be considered officials given the narrowness of his sought relief, given that he's only seeking monetary damages. It does not state a claim for relief in that space. And on that basis, the dismissal should be affirmed, assuming this case is just a dismissal. Thank you very much. Mr. Silberman, you say three minutes. Can I jump in here with a question from the get-go? Why did you not amend your complaint in the district court by March 29, 2017? Because I felt that the issues of sovereign immunity would still be present. Because the sovereign immunity was the motion, the district court order that's here on appeal said that the county had sovereign immunity. So even if I did and I named the county, then we would still be here on the sovereign immunity issue. That's why. So, with regards to the ADA claim... Wait, just... So, I mean, basically, you just made a calculated decision not to amend by... Well, I... The reason... I'm sorry for interrupting. The reason I...  which is the whole argument that we're here about. So I could not say that anybody but the bus operators discriminated against me. I can't say that. I can say the bus operators discriminated against me. I can provide you with case law that that's all it takes. You're not going to find any case law that says a Title II entity bus operator is not... Doesn't make the transit agency responsible. You won't. But you will find case law that says bus operators... Discriminatory actions by the bus operators do make the transit agency vicariously liable. I will say, even as an alternative argument, which I'm quite sure is in the brief, is that to determine... And I think this goes back to your original question, Judge Breyer, about the bus operators. You know, what responsibilities do they have? What authority do they have? And that, pursuant to law, is all very fact-intensive. You need to know what their manuals say. You need to know how they were trained. Without saying that bus operators aren't officials, you have to know what they can do and what they can't do. So the law is there has to be a fact-intensive inquiry to determine if an individual is an official of Miami-Dade Transit. But that's an alternative argument, and that was raised. So I'm going to say about the ADA, because the ADA was dismissed just because of immunity. So if this Court finds that that was wrong, which I'm sure we all agree it was, hasn't been argued, then I'll go back to the district court with my ADA claim only, because I can't prevail on both, ADA and RA. And then I will... That depends on whether we can affirm on a different ground supported by the record, which was that you failed to state a claim on the ADA claim, which was an argument that the county made in the district court and has preserved on appeal. That I didn't... Oh, because of the liability standard? Yeah. Understood. But, Mr. Silberman, we have your case, and we appreciate your argument this morning. And your time is up now, but we'll go on to the next one, the final one for the morning. Thank you. Thank you.